# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 29, 1897.

CITY & SUBURBAN RAILWAY COMPANY

VS.

THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY AND JANON FISHER, CITY COMMISSIONER.

*Cowen, Cross & Bond* and *Geo. Dobbin Penniman* for plaintiff.

*Thomas Ireland Elliott* for defendants.

STOCKBRIDGE, J.—

The bill in this case was filed by the City and Suburban Railway Company to restrain the Mayor and City Council of Baltimore, its servants, agents and employees, and Janon Fisher, City Commissioner, his servants, agents and employees from tearing up the tracks of the plaintiff on Holliday street in the City of Baltimore, between the north side of Lexington street and the north side of Baltimore street, or in any way interfering with the plaintiff in the use and maintenance of the said tracks for its railway business.

The bill, among other allegations, sets out that the Mayor and City Council of Baltimore, and the said City Commissioner intend and are about to remove certain of the said tracks, and it was stated in the argument that on the date of the filing of the bill and the issuance of the preliminary injunction, the tearing up was actually commenced.

It is conceded that if the tracks so undertaken to be removed were illegally upon Holliday street, that the Mayor had the undoubted right to order their removal by the City Commissioner, and if this be true the converse must be equally so, and if the company had the legal right to have them there, the attempted removal was illegal, and to that extent a trespass. The sole question for determination in this case, therefore, is, were the tracks in question lawfully upon the street, and if so, had or not the company, the plaintiff, or those under whom it claimed, ever lost the right to have them there?

The plaintiff in this case was not the original grantee of the right of user of the street in question; it acquired whatever right it has, by virtue, first, of a deed from the president, managers and company of the Baltimore and Yorktown Turnpike Road to the Baltimore Union Passenger Railway Company, bearing date the 1st of June, 1891; and second, under Chapter 266, of the Acts of Assembly of

1892, being the Act authorizing the consolidation of sundry railway companies under the name of the City and Suburban Railway Company, the plaintiff in this case, and the consolidation made in pursuance of that Act. And in passing it is to be noted, that while none of the ordinances granting rights to the Baltimore and Yorktown Turnpike Company did, by their terms, make the grant to the successors and assigns of the grantee, the Act authorizing the consolidation vested in the consolidated corporation all the rights, franchises and privileges to which each of the various component parts were entitled, and, therefore, the City and Suburban Railway Company is entitled to the same rights, and none others than were held or enjoyed by the Baltimore and Yorktown Turnpike Road.

The original ordinance is one, approved February 17th, 1863. By it the right is given to lay "a double track" along and upon certain streets therein named, and particularly "on Greenmount avenue from the city limits to Forrest street, and on Forrest, Hillen and East streets, so as to connect with the City Passenger Railways at those points." Next in order comes an ordinance approved June 20th, 1865, supplementary to the first, and authorizing "the construction of a track of passenger railways upon Hillen and Holliday streets, joining with their tracks at the corner of East and Hillen streets, and terminating at the intersection of Holliday street and Lexington street." The third in the chain is the ordinance approved October 14th, 1871, by which the company is "authorized and empowered to extend their lines of railway on Holliday street from the present terminus at the intersection of Holliday and Lexington streets to its intersection with Baltimore street."

By combining these various grants, it is seen that the company had the right to operate a line as follows: with a double track beginning at the intersection of North and Greenmount avenues, along Greenmount avenue to Forrest street, on Forrest to Hillen street, on Hillen to East street, then continuing with a single track along Hillen street to Holliday street, and on Holliday street to Lexington street, then from there down to Baltimore street, it had the right to operate a

railway without specification in the grant whether with a single or double track.

At this point was enacted what is commonly known and spoken of as the circuit track ordinance, being an ordinance approved April 1st, 1881. By this the right was given to four railway companies named therein, of a joint user over certain specified streets, upon some of which, some of the various grantees under that ordinance were already enjoying rights. Among the grantees named in this ordinance was the Baltimore and Yorktown Turnpike Company and the route covered by the ordinance included Holliday street between Baltimore and Fayette streets, on which that Company had according to the testimony one track and a siding at that time. Another of the grantees in this ordinance, the Citizens Railway Company, had a track upon North and South streets, which streets were also embraced in this circuit ordinance. Among the provisions contained in it was one, that in consideration of the privileges granted, "the Citizens Railway Company shall move its present track on North and South streets to the east, so that it shall form part of the double track to be laid, * * * and the Baltimore and Hall's Springs Railway Company and the Baltimore and Yorktown Turnpike Road shall in like manner and for the same consideration move their respective tracks and sidings, so as to admit of the construction of the circuit" as authorized by this ordinance. It has been argued and with much force, that the effect of this provision was to make the tracks upon Holliday street, therefore used and occupied solely by the Baltimore and Yorktown Turnpike a portion of the circuit thus provided for, and therefore to repeal all ordinances giving to the York Road Co. the right to use and maintain independent tracks upon this portion of Holliday street, and that this was the necessary effect, whether the right to use the circuit tracks was accepted and availed of by the York Road Company or not, since even if it did not so avail itself of the right granted, its successor, the Union Railway Company, and the present plaintiff, the City and Suburban Railway Company, had availed themselves of this privilege. Had the municipal legislation stopped there the Court

would have been inclined to adopt that view of the case, but it did not. The circuit ordinance was approved April 1st, 1881, the right to use the circuit tracks upon the part of the York Road Company already mentioned was complete, and upon the theory of repeal alluded to its right to separate tracks on Holliday street was extinguished. Twenty-five days later, upon the 26th of April, 1881, there was offered in the First Branch of the City Council the petition of the Baltimore and Yorktown Turnpike Road Company, asking permission to lay double tracks on certain streets, (Journal of First Branch 1881, page 748) and at the same session of the Council an ordinance was introduced conformable to the petition (First Branch Journal, 1881, page 759). Both the petition and ordinance were referred to the appropriate committee, which reported favorably upon the ordinance so introduced on the 11th of May following, and on the same day the rules were suspended and the ordinance passed (First Branch Journal, 1881, pages 847-8), and upon the same day, by the like procedure, the ordinance was passed in the Second Branch (Second Branch Journal, 1881, page 254). This ordinance was approved by the Mayor on the 27th of May, 1881. It authorized the Baltimore and Yorktown Turnpike Road to construct *a double track* of passenger railways from East street along Hillen to Holliday street, and along Holliday street to Baltimore street. This ordinance was enacted by the same Council which had passed the circuit ordinance. Not only must the Council be presumed to know the prior ordinances in force and effect at the time of its action, but here are two ordinances passed by the same Council almost within thirty days of one another, and it will not do to assume that in either the Council intended to do a nugatory act. If it is possible to give full effect to each without doing violence to one another, or to any other prior existing law or ordinance, it is the duty of the Court to place such construction upon the ordinances as will give the fullest effect to each in accordance with its terms. But here was a new, separate and distinct grant of a franchise subsequent to the ordinance by which the rights of the Baltimore and Yorktown Turnpike Road were merged by the operation of the circuit ordinance, and the grant of

a right which it is not even suggested has ever been repealed, and if not repealed, is a good and valid subsisting right today, unless the same has been forfeited by the non-user thereof.

It was suggested in argument by the learned City Solicitor, that this last-mentioned ordinance was inoperative, that there had never been any pretence of an exercise of the rights granted by it, and that the route was the same as that provided in the ordinances of 1865 and 1871, and that not having been used or availed of, any and all rights under it had been lost. To this proposition the Court is unable to agree. It is true that the route as prescribed in the Ordinance No. 100 of 1881 is the same as that authorized by the two preceding ordinances granting rights to this company, but the ordinance of 1881 gave the right to lay *double tracks* over the route specified, while the ordinance of 1865 gave the right to lay *a single track only*, and the ordinance of 1871 was *silent as to whether it gave the right to place a double or single track* upon the two blocks of Holliday street mentioned in it, and was therefore in a condition to give occasion to litigation. A distinctly new and additional right was conferred, a right which was availed of by the grantee and one that has been in continuous use ever since; for without it there would be no authority for the double tracks now in existence upon Hillen street west of East street, nor upon Holliday street; yet these tracks do exist; they exist by right under the Ordinance No. 100 of 1881, and by virtue of that only, and they have been and are in constant daily use, and cannot therefore have been forfeited by any non-user.

With reference to the supposed abandonment by the plaintiff of a portion of the tracks, those lying between Fayette and Baltimore streets, there was considerable argument, and numerous authorities were cited by the counsel for the plaintiff as to what constituted abandonment so as to work a forfeiture of the franchise. It is unnecessary to review these however, inasmuch as Section 8 of the original ordinance of 1863 in terms prescribes the character of non-user or abandonment which shall work a forfeiture of the franchise then granted, and as all the subsequent ordinances are expressly de-

clared to be upon the same condition as those embodied in the original ordinance, the provisions of Section 8 must control in this case. These are in substance that if the grantee shall fail to run cars upon the tracks over the routes authorized for the space of one year the franchise shall be forfeited. There is neither any proof or even suggestion of counsel, that there has at any time since 1881 been a twelve month period in which cars were not run over the tracks in question. In fact the proof in the case is directly to the contrary, and therefore it is impossible for the Court to find that there has been any abandonment of these tracks.

One other point remains to speak of. It is provided by Section 4 of the Ordinance of 1863 that the cars running upon said railways shall not remain standing on the lines of these routes for passengers, etc., and it is contended by the city that the use to which these tracks have been put by the plaintiff is a plain, open and avowed violation of such restriction, and must work a forfeiture of the rights conferred by the franchise. A careful examination of this section will lead rather to the conclusion that the limitation in question is in the nature of a police regulation, and amounts to no more and no less than the similar provision in Art. 41, Sec. 32 of the Baltimore City Code, 1893. The use of the conjunctive "and" immediately following the words quoted further bears this out. If cars are stored there by the plaintiff, it is just as much a violation of the police regulations of the City as it is of the provisions of the ordinance, and is a violation which the police have ample authority to stop entirely independent of the ordinance of 1863, and that which is a general police regulation cannot be changed in its character because it is inserted in an ordinance which grants a franchise. Had the ordinance of 1863 contained a provision that the Company should not allow the pockets of its passengers to be picked, but notwithstanding the provision, one was picked, the offense would be just the same had the provision not been made in the ordinance, and its violation would be no ground for forfeiture of any of the rights of the Company. At Baltimore street the tracks in question come to a dead end, and the cars must come to a full stop, and have

their motive power reversed, whether it be horses or electricity, it is not *on the line* of the route in the sense in which the words are used in the ordinance; it is *at the end of the line,* and to give to the first part of Section 4, the construction contended for by the City would be so narrow a one, that the Court does not feel justified in placing that interpretation upon it. For these reasons, the preliminary injunction heretofore granted will be made permanent.